IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| DANA MICHELLE VALORIE CALHOUN, | : | CASE NO. 18-67543-PMB |
| | : | |
| | : | CHAPTER 13 |
| Debtor. | : | |
| | : | |
| | : | |
| _____ | : | |
| | : | |
| WELLS FARGO BANK, N.A., | : | |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| | : | |
| DANA MICHELLE VALORIE CALHOUN, | : | |
| MELISSA J. DAVEY, Trustee, | : | |
| | : | |
| Respondents. | : | |
| | : | |
| | : | |
| _____ | : | |

**NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY AND REQUEST FOR
FINDING PURSUANT TO 11 U.S.C. SECTION 362 (d)(4)(B)**

Movant has filed documents with the court to obtain relief from the automatic stay and has
requested a finding pursuant to 11 U.S.C. SECTION 362 (d)(4)(B).

**YOUR RIGHTS MAY BE AFFECTED.  You should read these documents carefully and
discuss them with your attorney, if you have one in this bankruptcy case. If you do not have
an attorney, you may wish to consult one.**

If you do not want the court to grant the Motion or if you want the court to consider your views
on the motion, then you or your attorney shall attend the hearing scheduled to be held on

**December 6, 2018 at 1:30 P.M.** in Courtroom 1202, United States Bankruptcy Court, 75 Ted
Turner Drive SW, Atlanta, Georgia 30303**.**

If you or your attorney does not take these steps, the court may decide that you do not oppose the
relief sought in the motion and may enter an order granting relief.

You may also file a written response to the pleading with the Clerk at the address

stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Send your response so that it is received by the Clerk at least two business days before the hearing.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

The address of the Clerk's Office is: Clerk, United States Bankruptcy Court, 75 Ted Turner Drive SW, Suite 1340, Atlanta, Georgia 30303. You must also send a copy of your response to the undersigned at the address stated below.

Dated:  11/15/2018                                        */s/ A. Michelle Hart Ippoliti*
                                                        A. Michelle Hart Ippoliti
                                                        Georgia Bar No. 334291
                                                        Counsel for Movant
                                                        McCalla Raymer Leibert Pierce, LLC
                                                        1544 Old Alabama Road
                                                        Roswell, Georgia 30076
                                                        (678) 281-6537 Direct & Fax

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                                              :
                                                    :
DANA MICHELLE VALORIE CALHOUN,                      :        CASE NO. 18-67543-PMB
                                                    :
                                                    :        CHAPTER 13
        Debtor.                                     :
                                                    :
                                                    :
_____                      :
                                                    :
WELLS FARGO BANK, N.A.,                              :
                                                    :
        Movant.                                     :
                                                    :
vs.                                                 :
                                                    :
DANA MICHELLE VALORIE CALHOUN,                      :
MELISSA J. DAVEY, Trustee,                           :
                                                    :
        Respondents.                                :
                                                    :
_____                      :

MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND REQUEST FOR FINDING
PURSUANT TO 11 U.S.C. SECTION 362 (d)(4)(B)

COMES NOW Movant and shows this Court the following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay
for all purposes allowed by law and the contract between the parties, including, but not limited to, the
right to foreclose on certain real property. Movant also requests a finding that the petition in this case was
filed to delay, hinder, or defraud this Creditor that involves multiple bankruptcy filings, as contemplated
by 11 U.S.C. §362(d)(4)(B).

2.

Movant is the holder of a loan secured by certain real property in which Debtor claims an interest. A copy of the Security Deed is attached hereto and made a part hereof.  Said real property is security for a promissory Note, and is commonly known as **6980 Roswell Road, NE, Unit M6, Atlanta, Georgia 30328**, (the "Property").

3.

Debtor executed a promissory note secured by a mortgage or security deed.   The promissory note is either made payable to Creditor or has been duly indorsed.  Creditor, directly or through an agent, has possession of the promissory note.  Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or security deed.

4

The loan which Movant holds is seriously in default.    As of November 2, 2018, the loan is contractually due for the August 1, 2017 payment and is 16 payments in arrears, consisting of six (6) payments of $690.07 each and nine (9) payments of $695.05 each, and one (1) payment of $735.00.   The approximate amount of missed payments is $11,130.87. The terms of the Debt Agreement were amended by a loan modification agreement entered into by and between Wells Fargo Bank, N.A. and the Debtor dated February 21, 2014 (the "Loan Modification Agreement").

5.

Movant's estimated payoff as of November 2, 2018, is $96,017.55.  The current amount of unpaid interest on Movant's loan as of November 2, 2018, is $4,370.69.  Movant estimates the value of the property to be $207,100.00, based upon 2018 Fulton County Tax Assessor.  Upon information and belief, Movant is not aware of any other liens against the Property, other than association dues owed to Stone Manor Condo Association in the amount of $15,344.06, according to Debtor's Schedule D.

6.

Because of the Debtor's default and clear inability to make all required payments, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.

7.

This case was not filed in good faith.  Debtor has not made regular payments on the loan and has continually filed bankruptcy for the apparent sole purpose of stopping pending foreclosure sales and has been unable to offer any efforts to successfully prosecute said bankruptcies.

8.

Because the Security Deed so provides, Movant is entitled to its reasonable attorney's fees.

9.

This is the fifth (5th) case filed by Debtor affecting the subject property.  The prior cases are:

- Chapter 7 Case number 12-78588-wlh filed by Dana M. Calhoun aka Dana Michelle Valorie Calhoun on November 14, 2012. Movant filed a Motion for Relief on December 28, 2012, which was granted on February 5, 2013. The Debtor was discharged and terminated on February 28, 2013.

- Chapter 13 Case number 15-57314-pmb filed by Dana M. Calhoun aka Dana Michelle Valorie Calhoun on April 21, 2015, stopping a scheduled June 2, 2015, foreclosure. Movant filed a Motion for Relief on September 8, 2015, which was pending when Debtor's case was dismissed, unconfirmed, on September 24, 2015 and the case was terminated on February 19, 2016.

- Chapter 13 Case number 15-68417-pmb filed by Dana M. Calhoun aka Dana Michelle Valorie Calhoun on September 25, 2015. Movant filed an Objection to Confirmation of Plan on November 18, 2015 and filed a Motion for Relief on July 22, 2016 due to Debtor's failure to maintain post petition mortgage payments. The Motion for Relief was settled with a repayment order entered on September 22, 2016. Movant filed a second

Motion for Relief on September 14, 2017, which was still pending when Debtor's case was dismissed on June 1, 2018 upon Trustee's Motion  and the case was terminated on September 10, 2018.

- Chapter 13 Case number 18-60054-pmb filed by Dana Michelle Valorie Calhoun on June 15, 2018. The Debtor was dismissed, unconfirmed, on September 25, 2018.

- The instant case was filed on October 18, 2018, intending to stop a scheduled December 4, 2018 foreclosure.

10.

Based upon the foregoing history of rapidly successive failed bankruptcy petitions within a short period, Movant shows that the filing of this petition was part of a scheme to delay, hinder or defraud this Creditor that involves multiple filings, as contemplated by 11 USC §362(d)(4)(B). Movant seeks a finding to this effect such that upon recording in the Fulton County, Georgia property records of the Order granting relief pursuant to Section 362(d)(4)(B), such Order shall be binding and no automatic stay shall arise to Movant, its successors and assigns, in any other bankruptcy case filed by the Debtor Dana Michelle Valorie Calhoun, or any other party claiming an interest in the Property for a period of two years from the entry of same Order.

WHEREFORE, Movant prays:

(1) For an Order lifting the automatic stay and authorizing Movant, its successors and assigns, to proceed with the exercise of its private power of sale and to foreclose under its Security Deed and appropriate state statues;

(2) for a finding that this case was filed to delay, hinder or defraud this Creditor, as contemplated by 11 U.S.C. Section 362 (d)(4)(B), such that no automatic stay shall arise as to Movant, its successors and assigns, in any other bankruptcy case filed by the debtor or any other party claiming an interest in the Property for a period of two years from the entry of the Order;

(3) for an award of reasonable attorney's fees;

(4) for waiver of Bankruptcy Rule 4001(a)(3); and

(5)  for such other and further relief as is just and equitable.

_/s/ A. Michelle Hart Ippoliti_
A. Michelle Hart Ippoliti
Georgia Bar No. 334291
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076-2102
(678) 281-6537 – Direct & Fax

Bankruptcy Case No. 18-67543-pmb
Chapter 13
Judge: Paul M. Baisier

## CERTIFICATE OF SERVICE

I, A. Michelle Hart Ippoliti, of McCalla Raymer, LLC, Bankruptcy Department, 1544 Old Alabama Road, Roswell, Georgia 30076, certify:

That I am, more than 18 years of age; that on the **_15th___** day of **_November_**, 2018, I served a copy of the within MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND REQUEST FOR FINDING PURSUANT TO 11 U.S.C. SECTION 362 (d)(4)(B) filed in this bankruptcy matter on the following Respondent(s) by regular mail, with adequate postage affixed, unless another manner is indicated:

Dana Michelle Valorie Calhoun
6980 Roswell Road
Unit M6
Atlanta, GA 30328

Howard P. Slomka          *(served via email @ se@myatllaw.com)*
Slipakoff & Slomka, PC
Overlook III - Suite 1700
2859 Paces Ferry Rd, SE
Atlanta, GA 30339

Melissa J. Davey          *(served via email)*
Suite 200
260 Peachtree Street, NW
Atlanta, GA 30303

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on ___11/15/2018___   By:   */s/ A. Michelle Hart Ippoliti*
          (date)                    A.MICHELLE HART IPPOLITI, BAR NO. 334291
                                    Attorney for Movant

Loan No.

MIN:

Multistate

# NOTE

FHA Case No:

---

August 26, 2011

### 6980 ROSWELL ROAD NE UNIT M6
### ATLANTA, GEORGIA 30328
(Property Address)

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means **BRAND MORTGAGE GROUP, LLC** and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **NINETY-SEVEN THOUSAND THREE HUNDRED SIXTY-SEVEN AND NO/100** Dollars (U.S. **$97,367.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FOUR AND SEVEN EIGHTHS** percent (**4.875%**) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on **October 1, 2011**. Any principal and interest remaining on the **1st day of September, 2041**, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at

### BRAND MORTGAGE GROUP
### 6224 SUGARLOAF PARKWAY, STE 200
### DULUTH, GEORGIA 30097

or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$515.27**.
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

---

**FHA Multistate Fixed Rate Note - (10/95)**
**VMP-1R** (0210).02
IDS, Inc.

Page 1 of 3

Borrower(s) Initials _____

Loan No.: ▮

MIN: ▮

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other (specify)

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of FIFTEEN calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent (4.000%) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

Loan No.: ███

MIN: ███

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Dana M. Calhoun_ (Seal)                                        _____ (Seal)
DANA M. CALHOUN          -Borrower                                                        -Borrower

Pay to the order of **BRAND MORTGAGE GROUP**

Without Recourse this ░░VOID░░ _____, _____.

BRAND MORTGAGE GROUP LLC

By: _____
     STEPHANIE KENNEDY
Its: SENIOR VICE PRESIDENT



NMLS #75615

## ALLONGE TO NOTE

---

Borrower(s):  CALHOUN,  DANA M

Loan Number: ▮▮▮▮▮▮

Loan Amount: $97,367.00

Note Date:  08/26/2011

Property Address:  6980 ROSWELL ROAD NE UNIT M6

                ATLANTA, GA  30328

---

Without Recourse Pay to the Order of

**WELLS FARGO BANK, N.A.**

Brand Mortgage Group, LLC


*Stephanie Kennedy*
_____

**Stephanie Kennedy, Senior Vice President**

Deed Book 50350 Pg  191
Filed and Recorded Sep-02-2011 10:21am
2011-0220697
Georgia Intangible Tax Paid $292.50
Cathelene  Robinson
Clerk of Superior Court
Fulton County, Georgia

Johnson & Freedman, LLC
1587 Northeast Expressway
Atlanta, GA 30329

CERTIFIED TO BE A TRUE &
EXACT COPY OF ORIGINAL

WHEN RECORDED, MAIL TO:
**BRAND MORTGAGE GROUP**
**6224 SUGARLOAF PARKWAY, STE 200**
**DULUTH, GEORGIA 30097**

This instrument was prepared by:
**BRAND MORTGAGE GROUP**
**6224 SUGARLOAF PARKWAY, STE 200**
**DULUTH, GEORGIA 30097**
**678-226-7557**

---

[Space Above This Line For Recording Data]

---

**State of Georgia**

| FHA Case Number: |
| --- |
| MIN: |

# SECURITY DEED

THIS SECURITY DEED ("Security Instrument") is given on **August 26, 2011**.

The Grantor is **DANA M. CALHOUN, A SINGLE WOMAN**, ("Borrower")
and whose address is **6980 ROSWELL ROAD NE UNIT M6, ATLANTA, GEORGIA 30328**.

This Security Instrument is given to **Mortgage Electronic Registration Systems, Inc.** ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee. MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MICHIGAN 48501-2026**, tel. **(888) 679-MERS**.

**BRAND MORTGAGE GROUP, LLC**, ("Lender")
is organized and existing under the laws of **GEORGIA**,
and has an address of **6224 SUGARLOAF PARKWAY, STE 200, DULUTH, GEORGIA 30097**.

Borrower owes Lender the principal sum of **NINETY-SEVEN THOUSAND THREE HUNDRED SIXTY-SEVEN AND NO/100**, Dollars (U.S. **$97,367.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **September 1, 2041**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in **FULTON** County, Georgia:

**SEE ATTACHED EXHIBIT "A"**

---

FHA Georgia Security Deed with MERS – 4/96                                          Amended 2/01

IDS, Inc                                          Page 1 of 7                          Borrower(s) Initials _____

Deed Book **50350** Pg    **192**

Parcel ID Number

which has the address of    6980 ROSWELL ROAD NE UNIT M6
ATLANTA, GEORGIA 30328, ("Property Address");

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

---

FHA Georgia Security Deed with MERS – 4/96                                                                    Amended 2/01

IDS, Inc.                                          Page 2 of 7                            Borrower(s) Initials _ACC_

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

Deed Book **50350** Pg **193**

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

---

Deed Book 50350 Pg 194

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not

---

FHA Georgia Security Deed with MERS – 4/96

IDS, Inc.

Page 4 of 7

Amended 2/01

Borrower(s) Initials _LLC_

execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Deed Book **50350** Pg   **196**

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

| | | |
|---|---|---|
| [X] Condominium Rider | [ ] Graduated Payment Rider | [ ] Adjustable Rate Rider |
| [ ] Planned Unit Development Rider | [ ] Growing Equity Rider | [X] Other: **Exhibit A - Waiver of Borrower's Rights Rider** |

Deed Book **50350** Pg   **197**

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

*Dana M. Calhoun*                    (Seal)                    _____    (Seal)
DANA M. CALHOUN                    -Borrower                                                    -Borrower

STATE OF GEORGIA, _____DeKalb_____ County ss:

Signed, sealed and delivered in the presence of the two attesting witnesses:

_____
Unofficial Witness

_____                    County
Notary Public,
State of GEORGIA

Deed Book **50350** Pg **198**

MIN: ▮▮▮▮▮
FHA Case Number: ▮▮▮▮▮

# FHA CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **26th day of August, 2011**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **BRAND MORTGAGE GROUP, LLC** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

6980 ROSWELL ROAD NE UNIT M6
ATLANTA, GEORGIA 30328
(Property Address)

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**STONE MANOR**
(Name of Condominium Project)

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any

**FHA Multistate Condominium Rider**    Page 1 of 2                    **10/95**
IOS Inc.

Deed Book 50350 Pg 199

lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

C.  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_Dana M. Calhoun_ (Seal)                    _____ (Seal)
DANA M. CALHOUN          -Borrower                                        -Borrower

Deed Book 50350 Pg 200

EXHIBIT 'A'

All that tract or parcel of land lying and being in Land Lot 74 of the 17th District, Fulton County, Georgia, being
identified and depicted as Unit Number M-6 of The Courtyard at Sandy Springs, a condominium d/b/a Stone
Manor Condominiums, together with all right, title and interest in the unit and the appurtenances thereto under
that certain declaration of condominium for The Courtyards at Sandy Springs, a condominium d/b/a Stone
Manor Condominiums, recorded on September 2, 2005 in Deed Book 41457, Page 477, et seq., Fulton County
records.  The interest hereby conveyed includes, without limiting the generality of the foregoing such units
undivided percentage interest in the common elements of The Courtyards at Sandy Springs, a condominium
d/b/a Stone Manor Condominium.

Subject Property Address:        6980 Roswell Road # M6, Atlanta, Georgia  30328

Parcel ID:                       ███████████

Deed Book 50350 Pg 201

Loan Number: █████

## WAIVER OF BORROWER'S RIGHTS RIDER

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO **ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; THIS MEANS THAT MY FAILURE TO MEET EVERY **CONDITION OF THE MORTGAGE LOAN MAY RESULT IN THE LOSS OF MY PROPERTY THROUGH FORECLOSURE.** (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH OF THIS DEED, AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

*Dana M. Calhoun*
**DANA M. CALHOUN**                                    -Grantor

Signed, Sealed and delivered in the presence of:

_____          -Grantor

Notary Public                                            -Grantor

(Official Seal)

_____          -Grantor

Waiver of Borrower's Rights Rider
ICS, Inc.                                                        10/94

Loan Number ███████

Date:           **August 26, 2011**

Georgia Grantor:    **DANA M. CALHOUN**

Lender:         **BRAND MORTGAGE GROUP
6224 SUGARLOAF PARKWAY, STE 200
DULUTH, GA 30097
678-226-7557**

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a non judicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____        _____
Notary Public                    Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

**O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan though foreclosure.**

_____        _____        _____
**DANA M. CALHOUN**                Date                Date

Deed Book 50350 Pg 202
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Deed Book 51444 Pg 5
Filed and Recorded Jul-23-2012 08:30am
2012-0193093
Catherine Robinson
Clerk of Superior Court
Fulton County, Georgia

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: DEFAULT ASSIGNMENT, WELLS FARGO BANK, N.A. MAC: X9999-018 PO BOX
1629, MINNEAPOLIS, MN  55440-9790

## CORPORATE ASSIGNMENT OF SECURITY DEED

Fulton, Georgia
"CALHOUN"

MERS #: ▮▮▮▮▮▮▮▮  SIS #: 1-888-679-6377

Date of Assignment: July 18th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BRAND MORTGAGE
GROUP, LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901
E VOORHEES ST STE C., DANVILLE, IL  61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA  50328

Executed By: DANA M. CALHOUN, A SINGLE WOMAN  To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR BRAND MORTGAGE GROUP, LIMITED LIABILITY COMPANY, ITS
SUCCESSORS AND ASSIGNS
Date of Security Deed: 08/26/2011 Recorded: 09/02/2011 in Book/Reel/Liber: 50350 Page/Folio: 191 as
Instrument No.: 2011-0220697 In the County of Fulton, State of Georgia.

Assessor's/Tax ID No. ▮▮▮▮▮▮▮

Property Address: 6980 ROSWELL ROAD NE UNIT M6, ATLANTA, GA  30328

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $87,367.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR BRAND MORTGAGE GROUP,
LIMITED LIABILITY COMPANY, ITS SUCCESSORS AND ASSIGNS
On  7/19/2012

By _____ Assistant
   Heather Hegwood
Secretary

WITNESS                                    WITNESS

_____                       _____
ERI SALUKY                                 MEGAN AVON

Deed Book 51424 Pg 6
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

CORPORATE ASSIGNMENT OF SECURITY DEED, Page 2 of 2

STATE OF Iowa
COUNTY OF Polk

On ___7-19-12___, before me, __Kayla Holton__, a Notary Public in and for Polk in the State of Iowa, personally appeared __Heather Hegwood__, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

___Kayla Holton___
Kayla Holton
Notary Expires: __6-26-15__

KAYLA HOLTAN
Commission Number 773593
My Commission Expires
June 26, 2015

(This area for notarial seal)

Investor.: ▉▉▉▉▉
Loan No: ▉▉▉▉▉

# LOAN MODIFICATION AGREEMENT (SECURITY DEED)
### (Providing for Fixed Rate)

This Loan Modification Agreement ("Agreement"), made this **21ST** day of **FEBRUARY, 2014**, between **DANA M CALHOUN, A SINGLE WOMAN** ("Borrower"), whose address is **6980 ROSWELL ROAD NE #M6, ATLANTA, GEORGIA 30328** and **WELLS FARGO BANK, N.A.** ("Lender"), whose address is **3476 STATEVIEW BLVD, MAC# X7801-03K,   FORT MILL, SC 29715** amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **AUGUST 26, 2011** and recorded on **SEPTEMBER 2, 2011** in **BOOK 50350  PAGE 191, FULTON COUNTY, GEORGIA**, and (2) the Note, in the original principal amount of U.S. **$97,367.00, bearing the same date as,** and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at
**6980 ROSWELL ROAD NE #M6, ATLANTA, GEORGIA 30328**

the real property described is located in **FULTON COUNTY, GEORGIA** and being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower agrees that certain amounts owed will not be capitalized, waived, or addressed as part of this Agreement, and will remain owed until paid. These amounts owed are referenced in the Cover Letter to this Agreement, which is incorporated herein, and are to be paid with the return of this executed Agreement. If these amounts owed are not paid with the return of this executed Agreement, then Lender may deem this Agreement void.

2. As of, **APRIL 1, 2014** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$93,420.48**, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. **$0.00** and other amounts capitalized, which is limited to escrows

Wells Fargo Custom HUD Loan Modification Agreement

First American Mortgage Services                              Page 1

and any legal fees and related foreclosure costs that may have been accrued for work completed. **This Unpaid Principal Balance has been reduced by the contemporaneous HUD Partial Claim amount of $1,457.50. This agreement is conditioned on the proper execution and recording of this HUD Partial Claim.**

3. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender Interest will be charged on the Unpaid Principal Balance at the yearly rate of **3.7500%**, from **APRIL 1, 2014**. The Borrower promises to make monthly payments of principal and interest of U.S. **$432.64**, beginning on the **1ST** day of **MAY, 2014**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **APRIL 1, 2044** (the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

4. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

5. The Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement.

6. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:
   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and
   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7. If the borrower has filed for or received a discharge in a bankruptcy proceeding subsequent to or in conjunction with the execution of this Agreement and said debt was not reaffirmed during the course of the proceeding, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement and may only enforce the lien as against the property.

8. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

9. Borrower agrees to make and execute other documents or papers as may be necessary to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

10. If included, the undersigned Borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure

In Witness Whereof, the Lender have executed this Agreement.

**WELLS FARGO BANK, N.A.**

Margo Sue Pruett
Vice President Loan Documentation      4/30/2014

By _____      (print name)      Date
                             (title)

In Witness Whereof, I have executed this Agreement.

_Dana M. Calhoun_      4/8/2014
Borrower: **DANA M CALHOUN**      Date

Borrower: _____      **Date**

Borrower: _____      **Date**

Borrower: _____      **Date**

Wells Fargo Custom HUD Loan Modification Agreement

First American Mortgage Services      Page 4

**EXHIBIT A**

BORROWER(S):  DANA M CALHOUN, A SINGLE WOMAN

LOAN NUMBER:  ███████████

LEGAL DESCRIPTION:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 17TH
DISTRICT, FULTON COUNTY, GEORGIA, BEING IDENTIFIED AND DEPICTED  AS UNIT
NUMBER M-6 OF THE COURTYARD AT SANDY SPRINGS, A CONDOMINIUM D/B/A STONE
MANOR CONDOMINIUMS, TOGETHER WITH ALL RIGHT, TITLE AND INTEREST IN THE
UNIT AND THE OPPURTENANCES THERETO UNDER THAT CERTAIN DECLARATION OF
CONDOMINIUM FOR THE COURTYARDS AT SANDY SPRINGS, A CONDOMINIUM D/B/A
STONE MANOR  CONDOMINIUMS, RECORDED ON SEPTEMBER 2, 2005 IN DEED BOOK
41457,  PAGE 477, ET SEQ., FULTON COUNTY RECORDS. THE INTEREST HEREBY CONVEYED
INCLUDES, WITHOUT LIMITING  THE GENERALITY OF THE FOREGOING SUCH UNITS
UNDIVIDED PERCENTAGE  INTEREST IN THE COMMON  ELEMENTS OF THE COURTYARDS
AT SANDY SPRINGS, A CONDOMINIUM D/B/A STONE MANOR CONDOMINIUM.  SUBJECT
PROPERTY ADDRESS: 6980 ROSWELL ROAD #M6, ATLANTA, GEORGIA 30328

ALSO KNOWN AS: 6980 ROSWELL ROAD NE #M6, ATLANTA, GEORGIA 30328

Wells Fargo Custom HUD Loan Modification Agreement

First American Mortgage Services                          Page 5

Date: FEBRUARY 21, 2014
Loan Number: ██████████
Lender: WELLS FARGO BANK, N.A.

Borrower: **DANA M CALHOUN**

Property Address: **6980 ROSWELL ROAD NE #M6, ATLANTA, GEORGIA  30328**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_Dana M. Calhoun_                                    4/8/2014
Borrower                                              Date
**DANA M CALHOUN**

_____               _____
Borrower                                              Date

_____               _____
Borrower                                              Date

_____               _____
Borrower                                              Date

_____               _____
Borrower                                              Date

_____               _____
Borrower                                              Date

██████████

First American Mortgage Services                Page 6               ████████████